UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RECEIPT # 54918
AMOUNT $ 5
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK. _m_
DATE  3-31-04

DAVID JOSSELYN, )
   Petitioner )
    )
v. )
KATHLEEN DENNEHY )
   Respondent )

CV # 04-

# 04 CV 10621 GAO

**PETITIONER'S MEMORANDUM IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

INTRODUCTION

The Commonwealth alleged that the petitioner, David Josselyn, was involved in a string of armed robberies all taking place within two hours of one another on September 22, 1996. The Commonwealth alleged that Josselyn robbed an Osco Drug in Westford, a Sunoco in Chelmsford and a Home Depot in Tewksbury.

The initial police reports and witnesses' statements describe three different people.(R-15-29). The suspect was clean-shaven for two robberies and had dark stubble for another.( 2-79-82; 3-31). The height of the suspect ranged from five feet, five inches to six feet, while his weight ranged from 150 to 200 pounds.(2-41-41; 3-31). The

1

suspect's hair color ranged from blond to black with gray in it.(2-79,82,3-31)

On November 20, 1996, a Middlesex Grand Jury indicted Josselyn on three counts of armed robbery; one count of carrying a firearm without a license; one count of discharging a firearm within 500 feet of a dwelling; and three counts of being a habitual offender.(96-02070-001-005).(R-1).

STATEMENTS OF FACTS

OPENING STATEMENT

During the defendant's opening statement, trial counsel conceded that the bullet from the second robbery, the Sunoco gas station, came from a gun found in Josselyn's house. (2-36).

THE COMMONWEALTH'S CASE

In September 1996, <u>Irene Anderson</u> was working as a cashier at the Osco Drug in Westford, Massachusetts(2-38). On Sunday morning, September 22, 1996, she began work at about 9:00am.(2-39). She was assigned to work at register number one, which overlooks the glass window near the front of the store. (2-40). Just after her fifteen minute break at 10:30 am, Ms. Anderson said she saw a man outside the store pacing back and forth who looked as if he was waiting for someone. (2-40). She observed this man for about ten

minutes.(2-41)  She described this man as thin, about five feet, five inches to five feet, seven inches in height, late twenties or early thirties, wearing a two toned windbreaker jacket with a baseball cap that had some type of lettering on it.(2-41-42).  After ten or fifteen minutes of pacing, Ms. Anderson watched this man walk into the store, down an aisle and disappear. (2-43).  Some time later, she saw this man at her register.(2-43).  This man came over to Ms. Anderson's register with a candy bar and made some small talk telling her he was "having a candy fit."(2-48).  This man gave her a dollar to pay for his candy bar.(2-48).  As Ms. Anderson was giving him the change, she heard him mumble something.(2-48).  She thought he was asking for his change in specific amounts like quarters, until he reached in and tried to lift her money tray.(2-48).  Ms. Anderson panicked.(2-48).  She slammed the drawer shut, looked up and saw a gun.(2-48).  The man ordered her to give him the cash.(2-48).  Ms. Anderson was in shock.(2-48).  The whole thing took about a minute.(4-50).  She knew she could not open the cash drawer. (2-49).  She thought she remembered the man telling her he was going to kill her, but she panicked and ran to the customer service desk.(2-49).  When she looked back, the man was

3

leaving the store.(2-49). She noticed that the man left the candy bar and the change by the register.(2-49).

Ms. Anderson reviewed the surveillance video of the incident with the jury and pointed to the person on the video who tried to rob her.(2-52). She then described to the jury her efforts to put together a composite of the person who tried to rob her.(2-64). Shortly after the robbery, she then viewed a photo array that contained Josselyn's photograph, but she was unable to identify anyone from the photo array.(2-67).

Ms. Anderson identified the hat and gun taken from Josselyn's house as the items she recalled the robber having when he approached her on September 22, 1996.(2-69).

Ms. Anderson told the jury that she had a clear picture of the man who robbed her in her mind, and then looked around the courtroom but was unable to identify the man who robbed her.(2-72).

On cross-examination, Ms. Anderson admitted that she previously described the robber as having short blond hair and as clean shaven.(2-79). She admitted that in October 1996, almost two years prior to trial, she never described the jacket to the grand jury as two toned. (2-82). Rather, she told the grand jury the jacket was a dark color "probably some type of blue."(2-82). Although at trial she

4

identified the gun taken from Josselyn's house as the gun used in the robbery, she testified that she was unable to remember the color of the gun when asked before the grand jury. (2-85). Again, although she positively identified the hat taken from Josselyn's apartment as the hat the robber wore, she admitted that, when she was questioned about the hat in front of the grand jury, she could not be positive that it was the same hat. In fact, she told the jury that, "as far as I could determine, that was the hat."(2-87).

Thomas McEnaney, a 12-year veteran of the Westford Police Department and commanding officer of the detective unit, testified that on September 22, 1996, he received a page to call his office.(2-96). Detective McEnaney made a call to the station, then drove to the Osco Drug on One Carlisle Road in Westford.(2-97). He arrived at the Osco Drug shortly after 11:00 am.(2-98). Detective McEnaney spoke to his officers at the scene, took over the investigation and then spoke with Irene Anderson.(2-101). Detective McEnaney testified that Ms. Anderson appeared to be very shaken and on the verge of tears. (2-102). Despite trial counsel's objection, the Court allowed Detective McEnaney to corroborate Irene Anderson's testimony by offering her prior consistent statements made to Detective

5

McEnaney at the scene of the crime.(2-103). Specifically, in an effort to demonstrate that Irene Anderson was not mistaken about the description of the clothing or hair color the robber had, Detective McEnaney told the jury that Irene Anderson told him that the robber was wearing a blue baseball cap with white block lettering and a dark blue jacket that she described as being more than one color blue.(2-104). Detective McEnaney further told the jury that Irene Anderson described the gun as a small handgun that was light in color and shiny. (2-105). No notes or reports disclosed these details prior to trial.

Detective McEnaney identified the candy bar the robber left on cash register one for the jury. (2-111). He further explained that he lifted one fingerprint from the cash register at the corner of the cash drawer.(2-107). He submitted the fingerprint to the lab.(2-111). After lifting the print, Detective McEnaney accompanied Irene Anderson and another clerk, Susan Smith, back to the police station to work on a composite of the robber.(2-112). The composite that Irene Anderson created was entered as Exhibit 5.(2-113). Detective McEnaney explained to the jury that the composite was not very good because the foils available to his department to put together a composite were "very limited." (2-113).

6

Detective McEnaney then responded to the Sunoco Gas Station in Chelmsford for a recent report of a robbery.(2-115). Detective McEnaney brought the composite compiled by Irene Anderson and the videotape of the Osco Drug robbery to the Sunoco.(2-118). Upon arrival, he learned that the Sunoco robbery may have been captured on Sunoco's surveillance camera.(2-118). He went to the back room and played both tapes and compared the robbers.(2-118). He told the jury that after viewing the two tapes, he was sure that both places were robbed by the same person.(2-119). He told the jury that the actions of the suspect were very similar, with the same clothing, hat and same method of operation.(2-119).

From the Chelmsford Sunoco, Detective McEnaney then received information that there was an armed robbery at the Home Depot in Tewksbury.(2-119). He spoke with the cashier who had been robbed and retrieved a glasscutter that was still in its package that he had been informed the robber had left behind.(2-120). Again, over defense counsel's objection, the trial judge allowed Detective McEnaney to testify to hearsay statements from Jim Sanford, an employee at the Home Depot who had not yet testified.(2-126). Specifically, Detective McEnaney told the jury that Jim Sanford told him that the car the suspect fled in was a

7

white four door LeBaron with a New Hampshire license plate numbered CGH584.(2-127). Detective McEnaney, together with Detective Perron of the Westford Police, Detective DeLucia of the Tewksbury police, and Detective Mullen of the Chelmsford police, all went to the Manchester, New Hampshire police department in an attempt to track down the owner of the white LeBarron.(2-127). Detective McEnaney told the jury that he applied for two search warrants.(2-133). One for Josselyn's house and one for Josselyn's car.(2-133) Detective McEnaney told the jury that, based on his affidavits, the Court granted him permission to search both Josselyn's house and Josselyn's car.(2-134). He further told the jury that he was searching specifically for the firearm, the windbreaker and the baseball cap with the white lettering.(2-135). Detective McEnaney told the jury that, after executing the search warrants, police recovered a blue baseball cap with white lettering, a small firearm and a notepad with several pieces of paper and photographs of David Josselyn.(2-135, 145). Detective McEnaney used these photographs to complete a photo array.(2-145). He put together ten photographs and showed them to Irene Anderson.(2-146). He told the jury that Irene Anderson could not pick out the person who robbed the Osco Drug from the ten pictures she viewed.(2-146). David

8

Josselyn's photograph was among the ten photographs that Ms. Anderson viewed.(2-146).

On cross-examination, Detective McEnaney admitted that, when applying for a search warrant, he described the items to be seized as a dark colored windbreaker instead of a two tone wind breaker, and described the hat as a striped hat instead of a baseball cap with white lettering.(2-161).

Michael Carignan, an assistant manager at the Sunoco Mart in Chelmsford, testified that he was working at the Sunoco on September 22, 1996, with a coworker, David Evans.(2-170). At around 11:00am on September 22, 1996 Carignan recalled being called over to the lottery machine at the store to cash a one hundred dollar winning ticket for a female customer.(2-171). Right after paying this woman her money, a man approached the counter.(2-172). He recalled the man was white, small, about five six or five seven, clean-shaven, and had a blue sports hat on.(2-172). He thinks this man may have been wearing a jean jacket but could not be sure.(2-174). This man had a gun in his right hand.(2-176). The man pointed the gun toward Carignan, but not directly at him and fired it between where Carignan and his coworker Evans were standing.(2-176). The man ordered them to "empty the drawer now." (2-180). The man then went toward Evans and Carignan slipped away.(2-177). Carignan

9

watched as Evans told the man to calm down and watched Evans put the cash drawer on the counter.(2-181). Then he heard the front door close and saw a man with a blue hat rush past the window.(2-182). Carignan then called 911.(2-183). When the police arrived Carignan recalled having a conversation with Detective Mullen where Detective Mullen showed him the cigarette packs that contained a spent bullet.(2-186). A few days later, Detective Mullen showed Carignan a group of pictures of white men.(2-190). He was asked if he recognized the man who robbed him.(2-191). Carignan looked through the photographs and stopped at number six.(2-197). He told the jury that the person depicted in photograph number six, David Josselyn, was the person who robbed the Sunoco on September 22, 1996.(2-197). Carignan then made an in court identification of Josselyn.(2-200). Carignan told the jury that he could identify the defendant as the robber because he remembered Josselyn's eyes from the day of the robbery, however he was unable to tell the jury the exact color of Josselyn's eyes. (2-200, 207).

There were two surveillance camera in the Sunoco at the time of the robbery.(2-177). Neither surveillance videos were available at trial.

10

Carignan admitted on cross-examination that he initially described the robber as being in his early twenties and weighing about 150 pounds.(2-201) Carignan could not initially identify either the gun or the hat found in Josselyn's house.(2-204). In fact, he told the jury that he could not positively identify the man in photograph six as Josselyn(2-210).

David Evans, a cashier for Sunoco, testified that he was working on September 22, 1996, around 11:00am assisting a female customer when "all of a sudden" he heard a loud bang and then saw a short man with a small gun that stated: "The next one's for real. I want your money."(2-215). David Evans took out the cash drawer and handed it to the man.(2-218). The man then ran out the front door and disappeared.(2-219). Evans identified for the jury photographs from the surveillance camera of the person who robber the store.(2-221-222).

A few days after the robbery, Detective Mullen came into the Sunoco with about five or six photographs which David Evans looked at and selected a photograph of a person who looked like the man who robbed the Sunoco.(2-224). David Evans looked around the courtroom but was unable to identify the man who robbed the Sunoco on September 22, 1996.(2-226).

Detective Brian Mullen, a thirteen-year veteran with the Chelmsford police, testified that while working on September 22, 1996, he received a radio call to respond to a robbery at the Sunoco Food Mart in Chelmsford, Massachusetts.(2-227). Upon arriving at the Sunoco, Detective Mullen spoke with a Mike Carignan and David Evans.(2-228). Detective Mullen dusted the entrance door for prints and recovered one latent print on the door, which he photographed, lifted and preserved.(2-231). He also took possession of the surveillance videotape of the incident.(2-235). That afternoon, he met with Detective McEnaney to compare his surveillance videotape to that of the Sunoco surveillance tape.(2-235). Later, Detective Mullen and Detective McEnaney showed the two videos of the Osco drug robbery and the Sunoco robbery to the witnesses in the Home Depot robbery in Tewksbury.(2-236). At some point, the videotape of the Sunoco robbery was damaged after it got stuck in the VCR at the Home Depot.(2-237). Detective Mullen took the tape to a video specialist but was unable to save the tape.(2-238). He did however, manage to pull some still photographs from the damaged video and preserve them.(2-238).

Later that day, Detective Mullen returned to the Sunoco and discovered a bullet hole through a stack of Old

Gold cigarettes.(2-242). Upon removing the cigarettes, Detective Mullen noticed a bullet lodged near the back wall of the store.(2-244-46).

Then Detective Mullen assisted in a surveillance of 263 Stevens Street.(2-250). While there, he observed a white Chrysler LeBarron with New Hampshire plates in the driveway.(2-251). At some point he saw the defendant enter the white car and drive away from the house.(2-252). At about 2:00am, Detective Mullen assisted in the execution of a search warrant at 263 Stevens Street.(2-253). They found a blue baseball cap and a small caliber handgun.(2-253).

Detective Mullen told the jury that he showed a photo array of ten photos to Michael Carignan.(2-257). Carignan identified a photograph of Josselyn as the person who robbed him.(2-257). Detective Mullen told the jury that Carignan's identification of Josselyn was significant because they had Josselyn in custody in Marlboro, Massachusetts.(2-257). Detective Mullen then showed the photo array to David Evans who was unable to identify Josselyn from the array.(2-260, 224).

Detective Mullen admitted on cross-examination that when he described the photo array to the Grand Jury, he swore that the array only contained eight photographs. (2-263).

   <u>Detective Michael Perron</u>, a eleven-year veteran with the Westford police department, testified that on September 22, 1996, he received a page to respond to an unrelated motor vehicle homicide.(2-273). While on the scene, he heard a radio broadcast which caused him to return to the police station to meet with Detective McEnaney.(2-273). Both Detective Perron and Detective McEnaney went to the Sunoco to view the surveillance tape.(2-275). He assisted in tracking down the owner of the white Chrysler LeBarron.(2-279). After receiving some information, he requested a photograph of David Josselyn.(2-279). Detective Perron told the jury that he specifically requested a copy of a booking sheet for David Josselyn, but the trial court ordered this information stricken from the record and instructed the jury that Josselyn was not on trial for any other offense except the offenses charged in the indictment.(2-280-1).

   During the search of Josselyn's house, Detective Perron was in charge of photographing all the evidence seized.(2-286). He photographed the gun and the hat.(2-286-7).

   <u>James Crocker</u>, a student at the University of Massachusetts-Lowell and a part-time cashier at Home Depot, testified that on September 22, 1996, he was working at

register two and was robbed.(3-10). Specifically, he recalled that a man approached his register carrying a plexiglass cutter that he appeared interested in purchasing. (3-11). He then stated that the man also had a gun, took the money out of his register and told him not to say anything until he was gone.(3-16-17). Crocker believes that the person who robbed him took between nine hundred and one thousand dollars. He then saw this man leave the Home Depot through the garage door.(3-18). As soon as the man left, James Crocker ran over to a fellow employee, Jim Sanford, and told him he had been robbed at gunpoint.(3-19). Crocker pointed to a man in the window with a blue windbreaker and a hat and told Jim Sanford that that was the man who robbed him.(3-20). Crocker described this man as being between five eight and five-ten, with an average build, with dark stubble on his face,(3-33), wearing a baseball cap and a two-toned jacket.(3-22). Crocker saw Jim Sanford run after the suspect.(3-23). Crocker turned the Plexiglas cutter the suspect brought to the register over to his manager.(3-24). Later in the investigation, Crocker viewed two video tapes.(3-25). Crocker told the jury that the man who robbed him at the Home Depot was depicted on both tapes; one from the Osco Drug robbery and one from the Sunoco robbery.(3-25). Crocker then

15

identified the defendant, David Josselyn, as the person who robbed him.(3-27). Crocker based this identification on his viewing of the suspect for about 45 seconds.(3-28).

On cross-examination, Crocker admitted that when he first described the robber to the police, he described him as having black hair with gray in it.(3-30). Josselyn has brown hair. He described the suspects weight as between 170 and 200 pounds.(3-31). Crocker admitted that he was not really sure if the gun he identified as the gun used in the robbery was really the same gun that was identified at trial. (3-31).

James Sanford, a ten-year employee of the Home Depot, testified that on September 22, 1996, he was working at the customer service desk.(3-43). Shortly before noon, James Crocker, a cashier, came up to him and said, "I was just robbed." (3-45). Crocker directed Sanford's attention to a man jogging through the parking lot toward the Burger King.(3-47). Sanford observed that the man was wearing a baseball cap, a two-toned blue and black jacket, and jeans and sneakers.(3-49). Sanford went out to the parking lot and saw the suspect get into a four door white automobile.(3-53). He could not tell the make or the model of the car.(3-53). The car drove right toward him and he was able to see that the driver was a white male.(3-55).

The car then stopped at a traffic light and Sanford saw that the license plate was from New Hampshire with three letters and three numbers, CGH 584.(3-61).

During the investigation, the police showed Sanford two videotapes, one from the Osco Drug robbery and one from the Sunoco robbery.(3-63). Sanford told the jury that the person on both tapes looked like the same person who robbed the Home Depot.(3-63).

Sanford testified, over defense counsel's objection, that he saw the man who robbed the Home Depot in the courtroom, but then told the jury he was not sure.(3-71).

On cross-examination, Sanford admitted that, when he initially described the robber to the police, he said the robber had dark brown hair.(3-73).

<u>Catherine Winchester</u>, a rookie police officer with less than a month of experience with the Marlboro Police Department, testified that on September 23, 1996, at about 10:30 am, she stopped a white Chrysler LeBaron with New Hampshire plates and an expired Massachusetts inspection sticker.(3-83). She requested the license and registration of the driver who identified himself as David Josselyn.(3-84). The license plate number of the car was CGH 584. Officer Winchester identified Josselyn as the person whom she stopped on September 23, 1996.(3-85).

17

David Connell, a thirteen-year veteran detective with the Westford Police, testified that on September 23, 1996, he was attempting to track down the owner of the white car involved in the Home Depot robbery.(3-89). As a result of information he received, he set up a surveillance of 263 Stevens Street in Marlboro. (3-92). While there, he saw a white Chrysler LeBaron with New Hampshire license plate number CGH 584.(3-93). He ultimately stopped the Chrysler LeBaron and arrested the driver whom he identified as Josselyn.(3-94). Then Detective Connell assisted in "securing" Josselyn's residence until Lt. McEnaney came to the house with a search warrant.(3-97). Detective Connell then inventoried the items taken from the home.(3-99). He recalled that a Derringer revolver and some ammunition were recovered from Josselyn's house.(3-103).

Trooper Michael Arnold, a twenty-two year veteran with the State Police ballistic unit, testified that because of his expertise and training, he was capable of identifying a particular bullet as coming from a particular weapon to the exclusion of all other weapons in the world. (3-184). In this case, he compared a weapon taken from the Josselyn residence with a spent bullet recovered from the wall of the Sunoco and concluded that the gun taken from the

Josselyn residence fired the bullet retrieved from the Sunoco.(3-194).

On cross-examination, Trooper Arnold admitted that he did not know if the bullet retrieved from the Sunoco was a hollow point or a soft tip because of the damage to the tip of the bullet.(3-209). He claimed that this discrepancy would not have affected his opinion. (3-209).

Trooper Mary Richie, a ten year veteran with the State Police crime scene investigations unit, testified that in this case, she examined a Butterfinger candy bar but was unable to recover any prints. (3-228). She examined a Derringer revolver and was able to lift a latent print with seven or eight prints. (3-233). She told the jury she was able to positively exclude Josselyn as the source of this fingerprint.(3-235, 252). In addition, she examined some prints lifted from the Chelmsford Sunoco. (3-234). She compared the latent prints with the known prints of the defendant, David Josselyn. (3-235). On cross-examination, Trooper Richie admitted that David Josselyn's prints were not found on any of the objects submitted from the Chelmsford Sunoco robbery even after running the prints through the computer automated fingerprint identification system. (3-252, 255). However, she found 33 points of comparison in the plexiglass cutter and concluded that

19

David Josselyn's prints were on that plexiglass cutter. (3-241). She further admitted that she could not tell when Josselyn's prints were placed on the plexiglas cutter from the Home Depot. (3-253).

At the close of the Commonwealth's case, Josselyn moved for a required finding of not guilty as to the robbery of the Osco because the only witness who was present at the scene failed to identify Josselyn in court. (3-259). The Commonwealth urged the Court to deny this motion because the Commonwealth's witness, Ms. Anderson, had testified that the person she saw on the video surveillance of the Sunoco robbery, the second robbery, was the same person who robbed her at Osco. (3-260). The Court denied Josselyn's motion.

THE DEFENDANT'S CASE

Eva Marie Langel Josselyn testified, after a colloquy where she waived any Fifth Amendment rights, that she has been married to Josselyn for the past five and a half years. (3-266). She lived at 263 Stevens Street in Marlboro for the past 18 years. (3-266). On September 23, 1996, she left her house in the late afternoon after doing some laundry. (3-267). She ran some errands, ate dinner and then went back out to pick up a prescription. (3-267). When she returned, she saw three police officers at her