IV. **THE PROSECUTOR IMPROPERLY APPEALED TO THE SYMPATHY OF THE JURY IN VIOLATION OF JOSSELYN'S SIXTH AND FOURTEENTH AMDENMENT RIGHTS TO DUE PROCESS AND A FAIR TRIAL, WHEN HE URGED THE JURY TO LOOK AT THE REAL VICTIMS, THE HARDWORKING CASHIER'S WHO WERE JUST TRYING TO EITHER PUT THEMSELVES THROUGH SCHOOL OR SUPPORT THEIR FAMILIES. (GROUND III).**

A prosecutor may not appeal to the jury's sympathy in an effort to obtain a conviction. Moore v. Morton, 255 F.3d 95 (3rd Cir. 2001).

Here, the prosecutor urged the jury sympathize with the victims in this case when he told the jury: "the victims in this case are Irene Anderson, who was working on a Sunday morning as a clerk in an Osco Drug, who had a gun stuck in her side, a loaded gun, by him (indicating). David Evans who was holding down two jobs working on a Sunday morning as a clerk at a gas station and he worked at Office Max during the week, had a bullet whiz by him after he (pointing to the defendant) fired it. Michael Carigan, who worked his way up to assistant manager at the Sunoco Food Mart, an eighteen-year-old kid. The bullet just missed him too. What about James Crocker, didn't you like him, clean-cut young guy, working his way through college? The Home Depot. Get as many hours as he can financing his education. . . . He also had a gun put to his side when the defendant robbed him. That's what this case is all

about." (4-82).

The prosecutor unlawfully preyed upon the sympathy of the jury in his inflammatory emotional appeal during his closing argument. The prosecutor here asked the jury to think about how nice and hard working the victims were when they make their decision as to the credibility of the witnesses at trial. Such elements of irrationality and irrelevance introduced into the trial can only serve to make it less likely that the jury will return a verdict based on fair, calm consideration of the evidence. This is especially true when the improper comments hinge on the central issue at trial, the credibility of witnesses. United States v. Whiting, 28 F. 3d 1296 (1st Cir. 1994).

The prosecutor's appeal for sympathy for his own witnesses tipped the scale in favor of the Commonwealth in violation of Josselyn's rights to due process and a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. Asking the jury to consider who they like better in determining Josselyn's guilt or innocence, the nice hardworking Commonwealth witnesses or Josselyn, with a criminal record, accused of three armed robberies, unfairly prejudiced Josselyn because it caused the jury to focus not on credibility, but on sympathy for the victims. This argument was improper.

42

Copeland v. Washington, 232 F.3d 969 (8th Cir.), cert denied 121 S.Ct. 1968 (2001). Josselyn was prejudiced because there is no way to tell from the transcript if the jury's sympathy for the victims played a role in his convictions. This error was serious and went to the heart of the adversarial system requiring reversal of Josselyn's conviction. Cf. United States v. Levy-Codero, 67 F.3d. 1002 (1st Cir. 1995).

The state court found that, "while this part of the prosecutor's argument contained rhetoric and hyperbole, it nevertheless focused on suggesting reasonable inferences the jury might draw from the evidence and emphasized the seriousness of the crimes committed." (Opinion. P 3). The state court claimed that the prosecutor's argument was a proper "response to defense counsel's closing argument" (opinion p.3). The state court then claimed that defense counsel's failure to object or to seek curative instruction is indicative that the comment was not viewed as prejudicial at the time. (opinion p 3).

The state court's reasoning ignores the federal law on erroneous closing argument by prosecutors. The United States Supreme Court in Donnely v. DeChristoforo, 416 U.S. 637, 643 (1974), concluded that a prosecutor's improper closing argument reaches the level of constitutional error

43

if the prosecutor's comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." See also, Daren v. Wainwright, 477 Y.S. 168, 181 (1986). As such, proper evaluation of Josselyn's federal due process claims required more than a mere reference to the trial attorney's failure to object to justify affirming a conviction. In Namut v. United States, 373 U.S. 179 (1963), the United States Supreme Court recognized that, even in the absence of an objection, "trial error may require reversal of a criminal conviction if the error involves prosecutorial misconduct or the error was prejudicial to the accused."

Because the state court ignored the federal law in concluding the prosecutor's argument was proper, there was no adjudication on the merits of Josselyn's claim sufficient to satisfy the standards of 28 U.S.C. § 2254. As such, this Court can review Josselyn's claim de novo.

V. <u>THE PROSECUTOR ERRONEOUSLY INVERTED THE BURDEN OF PROOF BY INSTRUCTING THE JURY IN HIS CLOSING ARGUMENT THAT THEY MUST BELIEVE ALL THE EVIDENCE JOSSELYN PRESENTED IN ORDER TO ACQUIT HIM IN VIOLATION OF JOSSELYN'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. (GROUND IV).</u>

"The Due Process Clause protects the accused against convictions, except upon proof beyond a reasonable doubt of

44

every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970); Commonwealth v. Repoza II, 400 Mass. 516, 518, cert. denied, Massachusetts v. Repoza, 484 U.S. 935 (1987).

"When a dispute [of] facts exists, the Sixth Amendment to the United States Constitution guarantees an accused the right to have a jury decide the question." Lanigan v. Maloney, 853 F.2d 40, 49-50 (1st Cir. 1988); Duncan v. Louisiana, 391 U.S. 145, 149 (1968).

The law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or presenting any evidence. Taylor v. Kentucky, 436 U.S. 478 (1978). The burden of proving a defendant's guilt beyond a reasonable doubt always rests with the prosecution. In Re Winship, 397 U.S. at 364. Any reference to the defense theory must avoid the suggestion that the jury must accept that theory in order to acquit the defendant. Sandstrom v. Montana, 442 U.S. 510, 524 (1979) (burden shifting instruction violated due process).

Here, the prosecutor told the jury that "all of the things that the defendant is trying to sell you must be true for you to find the defendant not guilty. That defies logic. It insults your intelligence. It does not make sense."(4-87). This language shifted the burden of proof

to the defendant to prove his innocence in violation of his rights to due process under the Sixth and Fourteenth Amendments to the United States Constitution. In effect, the prosecutor told the jury that if they disbelieved any part of Josselyn's theory or disbelieved any part of the alibi witness's testimony, they must find Josselyn guilty. This error requires reversal of Josselyn's conviction because it violates the fundamental principle governing our system of criminal justice; that the prosecution bears the burden of proving all elements of the offenses charged and must persuade the fact finder of the facts necessary to establish each of those elements. <u>United States v. Gaudin</u>, 515 U.S. 506 (1995); <u>Victor v. Nebraska</u>, 511 U.S. 1, (1994).

The state court failed to address Josselyn's federal claims on this issue because it found that the prosecutor's argument was a very "specific comment on the weakness of the defendant's claims of discrepancies in the eyewitness testimony, as well as the weakness of the defendant's alibi evidence." (Opinion p.3). Whether the prosecutor's burden shifting argument contains specific references to the weakness of the defendant's theory is not the point of federal due process review. The Due Process clause requires proof beyond a reasonable doubt of every fact

46

necessary to constitute the crime charged. <u>In Re Winship</u>, 397 U.S. 358 (1970). In evaluating a closing argument error, the Supreme Court has noted that "in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be prejudicial to the accused." <u>Dunlop v. United States</u>, 165 U.S. 486, 498 (1897). The Court must consider the probable effect the prosecutor's argument would have on the jury's ability to judge the evidence fairly. <u>United States v. Young</u>, 470 U.S. 1 (1985). The state court ignored Josselyn's federal claims. The federal standard of evaluating burden shifting arguments focuses upon the argument as a whole, and leaves no room for avoiding error by claiming the prosecutor's argument was specifically tailored to the defendant's claim. As such, burden shifting claims were ignored. <u>Sandstrom v. Montana</u> 442 U.S. 510, 524 (1979). The state court claimed, without conceding error, that any error was harmless. In fact, the Supreme Court has held that burden shifting language violates a defendant's right to due process. <u>Id</u>. Because the state court ignored Josselyn's federal claims, there was no adjudication on the merits sufficient to satisfy 28 U.S.C. § 2254. As such, this court can evaluate Josselyn's claims de novo.

47

VI. **THE PROSECUTOR'S USE OF PRIOR CONSISTENT STATEMENTS OF IRENE ANDERSON, INTRODUCED THROUGH A POLICE OFFICER WHO TOOK HER INITIAL STATEMENTS, VIOLATED JOSSELYN'S RIGHT TO A FAIR TRIAL PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. (GROUND V).**

Prior consistent statements of a witness are generally not admissible to bolster the testimony of the witness. Tome v. United States, 513 U.S. 150 (1995). If a witness is impeached on the ground that her testimony is a recent contrivance or was the product of bias or undue influence, then prior consistent statements made at a time before any motivation to lie existed, may be introduced to corroborate her testimony. Id. Where a witness identifies the defendant in a criminal case during her direct examination, she or others may also testify as to a prior consistent identification on prior occasions to corroborate the courtroom identification. Gilbert v. California, 388 U.S. 263 (1967). In criminal cases, prior identification of the defendant is admissible to corroborate an in-court identification, to impeach a witness who disclaimed the prior identification, and as substantive evidence of the defendant's guilt. If a witness at trial makes no in-court identification of the defendant and disclaims any pretrial identification, third-party evidence of a pretrial

48

identification is not admissible for substantive purposes. Here, although Irene Anderson told the jury she had a clear picture of the person who robbed her, she could not identify Josselyn at trial as the Osco Drug robber.(2-72). In addition, Ms. Anderson was unable to pick Josselyn's picture out of a photo array in a pre-trial identification procedure. (2-67). She did however, identify the gun and the hat removed from Josselyn's home as the gun and hat the robber used at the time of the robbery.(2-69, 87). Trial counsel impeached Ms. Anderson relative to her identification of the gun and the hat with her grand jury testimony where she told the grand jury that the gun taken from Josselyn's house looked smaller than the gun the robber used and that she was not sure the hat was the same.(2-85-87).

In an attempt to corroborate Ms. Anderson's identification of the hat and the gun, the Commonwealth, without asking Ms. Anderson if she told the police about the gun and the hat, called Detective McEnaney to corroborat Ms. Anderson's identification of Josselyn's hat and the gun.(2-103-105). Detective McEnaney told the jury, over the defendant's objection, that Ms. Anderson told him that the hat was a blue baseball cap with white lettering.(2-104). Then, again over Josselyn's objection,

49

Detective McEnaney told the jury that Ms. Anderson described the gun used in the robbery as a small handgun that was light in color and shiny.(2-105).

The Commonwealth's use of Detective McEnaney to bolster Irene Anderson's lack of identification of Josselyn violated Josselyn's right to a fair trial because it bolstered Ms. Anderson's inability to identify Josselyn as the robber. The clear inference the Commonwealth knew the jury would draw by having a veteran detective corroborate a tenuous identification of a hat and gun was that Ms. Anderson was sure the items taken from Josselyn's house were used by Josselyn in the robbery. Detective McEnaney's corroborative identification violated Josselyn's rights to confront and cross-examine witnesses pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. Crawford, 124 S.Ct. at 1364-66. In effect, the Commonwealth used this veteran detective to make a de facto identification of Josselyn absent any foundation that Ms. Anderson had in fact made these statements to Detective McEnaney. This de facto impermissible identification of Josselyn was the only connection the Commonwealth offered to prove Josselyn committed the robbery of Osco Drug. As such, this error resulted in Josselyn's conviction and

requires reversal of his conviction. <u>Maurer v. Dept. of Corrections</u>, 32 F.3d 1286 (8th Cir. 1994).

The state court erroneously held that the statements were properly admitted because these statements were made to the police at the scene and bore no indicia of later bias or contrivance. The United States Supreme Court has held in <u>Crawford v. Washington</u> that statements of witnesses routinely admitted by trial judges under an exception to the hearsay rule violate the defendant's rights pursuant to Sixth and Fourteenth Amendments to the United States Constitution if the defendant had no opportunity to cross-examine the hearsay declarant. 125 S.Ct. at 1364-66. <u>Crawford</u> overruled <u>Ohio v. Roberts</u>, 448 U.S. 56, (1980), under which hearsay from an out-of-court declarant not subject to cross-examination was admissible if a judge found it "reliable". The <u>Crawford</u> court holds that a finding of reliability is not a constitutionally adequate substitute for the opportunity to test a declarant's statement by cross-examination. "The unpardonable vice of the Roberts test . . . is . . .its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." <u>Crawford</u>, 124 S.Ct. at 1371. The state court completely ignored Josselyn's federal claim. As such, there is no adjudication on the

51

merits of this claim sufficient to satisfy the requirement of 28 U.S.C. § 2254. Under these circumstance, this Court is free to evaluate Josselyn's claim de novo.

VII. **THE TRIAL JUDGE'S ERRONEOUS INSTRUCTION TO THE JURY THAT "INNOCENT MIS-RECOLLECTIONS" HAPPEN FREQUENTLY AND ORDER TO THE JURY TO DISREGARD ANY INCONSISTENCIES OF WITNESSES THAT THEY DETERMINE WERE MINOR OR NOT INTENTIONAL VIOLATED JOSSELYN'S RIGHTS TO A FAIR TRIAL PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. (GROUND SIX).**

The Sixth and Fourteenth Amendments to the United States Constitution require a trial judge's instructions to the jury be free from conflict and not internally inconsistent. In fact, the trial judge has a duty to state the applicable law to the jury clearly and correctly. Kelly v. South Carolina, 534 U.S. 246, 256 (2002).

Here, in defining a critical element of credibility of the identification witness's testimony, in light of their prior inconsistent statement, the trial judge did not state the law clearly or correctly. In determining the weight to give prior inconsistent statements, the trial judge told the jury to "keep in mind that an innocent mis-recollection is not an uncommon experience, and that in weighing discrepancies in the evidence, the jury should determine whether the discrepancies pertain to a matter of

52

importance or an unimportant detail, and whether the discrepancy was intentional or innocent." (4-105). This language, in effect, bolstered the Commonwealth's identification witness's testimony by instructing the jury that they could ignore witness's inconsistent statements as to identification of Josselyn as the robber, if they determined that the inconsistency was on a minor matter or if the inconsistency was not intentional by the witness. In fact, it is well established that "when a dispute of fact exists, the Sixth Amendment to the United States Constitution guarantees an accused the right to have a jury decide the question." Lanigan v. Maloney, 853 F.2d 40, 49-50 (1st Cir. 1988); Duncan v. Louisiana, 391 U.S. 145, 149 (1968). This erroneous instruction struck at the heart of Josselyn's theory of mistaken identity and undermined any effort by the defense to cast doubt on the reliability of the identification witnesses' testimony. Reversal of Josselyn's conviction is required. Carter v. Montgomery, 769 F2d. 1537 (11th Cir. 1985).

The state court failed to address Josselyn's claim. As such, there was no adjudication on the merits sufficient to satisfy the requirements of 28 U.S.C. § 2254. As such, this court can review this claim de novo.

Respectfully Submitted,
~~DAVID~~ JOSSELYN
By His Attorney

_____
Rosemary Curran Scapicchio
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
BBO # 558312

54