UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID JOSSELYN,

    Petitioner,

v.                                  Civil Action No. 04-10621-GAO

KATHLEEN DENNEHY,

    Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF
THE RESPONDENT'S MOTION TO DISMISS**

The respondent, Kathleen Dennehy, respectfully submits this memorandum of law in support of her motion to dismiss the petition for a writ of habeas corpus filed by the petitioner, David Josselyn. As discussed more fully below, Josselyn failed to exhaust four of the six claims in his habeas petition. Consequently, the petition should be dismissed as unexhausted. Rose v. Lundy, 455 U.S. 509, 522 (1982).

**Prior Proceedings**[1]

Following a jury trial, Josselyn was convicted of armed robbery with intent to assault, armed robbery (two counts), unlawful possession of a firearm, and unlawfully discharging a firearm. See Commonwealth v. Josselyn, 56 Mass. App. Ct. 1101, 775 N.E.2d 811 (2002) (table)

---

[1] The following facts are drawn from the pleadings in the state-court proceedings, which are included in the Respondent's Supplemental Appendix ("Supp. App.") filed herewith. In considering this motion, moreover, the Court may review the underlying state-court record. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (on motion to dismiss, court may consider official public records, documents that are incorporated by reference into the complaint and documents that are "central to the plaintiff's claim").

[Supp. App., Exh. 4 at p. 2]. Josselyn filed a direct appeal with the Massachusetts Appeals Court, in which he raised six objections:

1. The trial court erred when it allowed witnesses to testify that the individual seen committing the robberies in the surveillance tapes was Josselyn;

2. The prosecutor's alleged comments concerning Josselyn's jacket and automobile were improper, and violated Josselyn's right to a fair trial;

3. The prosecutor improperly appealed to the sympathy of the jury when he allegedly asked the jury to think about Josselyn's victims;

4. The prosecutor "erroneously inverted the burden of proof" when he commented on the weaknesses in Josselyn's defense;

5. The trial court improperly admitted prior consistent statements concerning a witness's description of Josselyn; and

6. The trial court's instructions on "innocent mis-recollections" was in error and violated Josselyn's federal and state constitutional rights.

[Supp. App., Exh. 2 at pp. 27-48]. On September 26, 2002, the Appeals Court affirmed Josselyn's conviction. See Josselyn, 56 Mass. App. Ct. at 1101, 775 N.E.2d at 811 [Supp. App., Exh. 4].

Josselyn then filed an Application for Further Appellate Review ("ALOFAR") with the Massachusetts Supreme Judicial Court (the "SJC"). [Supp. App., Exh. 5]. Unlike his direct appeal, Josselyn claimed only four trial errors:

1. The trial court erred when it allowed witnesses to testify that the individual seen committing the robberies in the surveillance tapes was Josselyn;

2. The prosecutor improperly appealed to the sympathy of the jury when he allegedly asked the jury to think about Josselyn's victims, thus violating Josselyn's due process rights;

3. The trial court improperly admitted prior consistent statements concerning a witness's description of Josselyn; and

  4.  The trial court's instructions on "innocent mis-recollections" was in error and violated Josselyn's federal and state constitutional rights.

[Id. at pp. 11-23]. On April 2, 2003, the SJC denied Josselyn's request for further review. [Supp. App., Exh. 6]. This habeas petition followed.

### The Instant Federal Habeas Petition

In his petition, Josselyn asserts six grounds for relief:

  1.  The state court violated Josselyn's rights to a fair trial and to due process guaranteed by the 6th and 14th Amendments to the United States Constitution where the state court affirmed Josselyn's conviction based upon erroneously-admitted identification evidence;

  2.  The prosecutor's alleged comment that the same jacket and same car were used in all three robberies violated Josselyn's right to a fair trial pursuant to the 6th and 14th Amendments to the United States Constitution;

  3.  The prosecutor improperly appealed to the sympathy of the jury in violation of Josselyn's 6th and 14th Amendment rights to due process and a fair trial;

  4.  The prosecutor erroneously inverted the burden of proof by telling the jury about the weaknesses in Josselyn's case;

  5.  The prosecutor's use of prior consistent statements violated Josselyn's right to confront and cross-examine witnesses under the 6th and 14th Amendments to the United States Constitution; and

  6.  The trial judge's erroneous instruction to the jury, that "innocent mis-recollections" happen frequently violated, Josselyn's rights to a fair trial pursuant to the 6th and 14th Amendments to the United States Constitution.

[Petition at ¶ 12 and attachment thereto at pp. 29-53]. As set forth below, Grounds Two and Four were never proffered to Massachusetts's highest tribunal, while the federal nature of Grounds Three and Five were not properly presented to the state courts.

## Discussion

A.  **Josselyn Was Required to Exhaust His State-Court Remedies Before Filing This Petition.**

It is well settled that "a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing Rose v. Lundy, 455 U.S. 509, 518-19 (1982)). See also Picard v. Connor, 404 U.S. 270, 276 (1971); 28 U.S.C. § 2254(b)(1)-(2). In addition to ensuring that state courts have the first opportunity to correct their own federal constitutional errors, the exhaustion requirement enables federal courts to accord appropriate respect to the sovereignty of the states and thus promotes comity by "minimiz[ing] friction between our federal and state systems of justice...." Duckworth v. Serrano, 454 U.S. 1, 3 (1981). See also Rose, 455 U.S. at 518 (reiterating importance of exhaustion doctrine); Mele v. Fitchburg District Court, 850 F.2d 817, 819 (1st Cir. 1988) (same).

Consequently, before filing an application for habeas corpus relief in federal court, the petitioner must have first presented the substance of each of his federal habeas claims to the state's highest tribunal. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999); Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987); Mele, 850 F.2d at 819. This means that the petitioner must have submitted both the predicate facts and the federal legal theories to the state's highest court. Gagne, 835 F.2d at 7; Mele, 850 F.2d at 819-20.

Moreover, *every* claim must have been exhausted. Rose, 455 U.S. at 522; O'Sullivan, 526 U.S. at 848. If a petition is "mixed" – that is, contains both exhausted and unexhausted claims – it

4

must be dismissed.[2]  Rose, 455 U.S. at 522; Adelson, 131 F.3d at 261-62; Martens v. Shannon, 836 F.2d 715, 717-18 (1st Cir. 1988).  Finally, a habeas petitioner "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim."  Adelson, 131 F.3d at 262.  Josselyn cannot meet that burden here.

**B.    Josselyn Abandoned Grounds Two and Four When He Went Before the SJC.**

Josselyn never proffered Grounds Two and Four to the SJC.  In Ground Two, Josselyn charges that the prosecutor made improper remarks concerning Josselyn's car and jacket.  [See Petition at ¶ 12 and attachment thereto at pp. 38-40].  In Ground Four, Josselyn objects to the prosecutor's comments on the weaknesses in Josselyn's defense.  [Id. at ¶ 12 and attachment thereto at pp. 44-47].  While Josselyn did raise these two complaints in the Appeals Court, he dropped both claims when he went before the SJC.  They simply were not in his ALOFAR.  [See Supp. App., Exh. 5 at pp. 11-23].  Josselyn's petition therefore is unexhausted and should be dismissed.  See Mele, 850 F.2d at 819-20; O'Sullivan, 526 U.S. at 848.

In Mele, for example, the habeas petition contained arguments that the petitioner had presented to the Appeals Court, but which he had not included in his ALOFAR to the SJC.  850 F.2d at 818-19.  The First Circuit held that the petitioner had not properly exhausted his state-

---

[2] Prior to enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), failure to exhaust all claims in state court required dismissal of the entire petition. Under AEDPA, a court confronted with unexhausted claims may, in its discretion, either dismiss the entire petition as unexhausted or deny (but not grant) the petition on the merits.  See 28 U.S.C. § 2254(b)(1)-(2) ("[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State") (emphasis added).  Thus, the Court may deny the entire petition, but may not dismiss the unexhausted claims and then grant the petition on the basis of Josselyn's remaining claims.  Id.; O'Sullivan, 526 U.S. at 842-48 (affirming dismissal of petition containing unexhausted claims).

court remedies:

> It is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal.

Id. at 820.

That holding applies here with full force. Josselyn pressed both complaints in the Appeals Court, but abandoned both issues when he went before the SJC. As a result, he failed to properly exhaust his state-court remedies. Id. See also Barresi v. Maloney, 296 F.3d 48, 52 at n.1 (1st Cir. 2002) (claim which is squarely raised in an intermediate state court but then abandoned on appeal to the state's highest court is not properly exhausted); O'Sullivan, 526 U.S. at 848 (habeas petition included claims that had been asserted in the appellate court but not the Illinois Supreme Court; claims therefore were not properly exhausted; dismissal of petition affirmed). Josselyn's petition therefore is not exhausted and should be dismissed. Id. See also Rose, 455 U.S. at 522; Picard, 404 U.S. at 276.

**C.     Josselyn Tendered Ground Five to the SJC Purely as a State Evidentiary Objection.**

In Ground Five of the petition, Josselyn alleges that the admission of certain prior consistent statements violated his Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses. [See Petition at ¶ 12 and attachment thereto at pp. 50-51]. While it appears that the factual underpinnings of Ground Five were presented to the SJC, Josselyn's argument below was presented purely as a state-law evidentiary objection. In challenging the admission of the statements to the SJC, Josselyn did not cite to any constitutional authorities, advance any constitutional theories, make any constitutional analogies or do anything else to "fairly and

recognizably present[] to the state courts ... the legal bases of [a] federal claim." Adelson, 131 F.2d at 262. Indeed, while Josselyn now contends that the testimony abridged his right to confront and cross-examine witnesses, he made no such argument (in constitutional terms or not) when he was before the SJC.[3] The issue of "confronting and cross-examining witnesses" appears nowhere in Josselyn's ALOFAR. [See Supp. App., Exh. 5 at pp. 16-19].

Instead, Josselyn simply argued that the testimony was inadmissible. [Id.] At the beginning of this section of his ALOFAR, for example, Josselyn stated his premise quite clearly: "[p]rior consistent statements ... are generally not admissible to bolster the testimony of the witness." [Id. at p. 16]. He then explained when prior consistent statements are – and are not – admissible in Massachusetts criminal trials. [See id. at p. 17]. Throughout the rest of the argument, Josselyn contended that the admission of the testimony was "clearly erroneous," without "merit," in "error," and "created a substantial likelihood of a miscarriage of justice." [See id. at pp. 18-19].

In so advocating, Josselyn relied on cases that examined the admissibility of evidence under state-law principles and the Federal Rules of Evidence. See, e.g., Commonwealth v. Kindell, 44 Mass. App. Ct. 200, 202-03, 689 N.E.2d 845, 847-48 (1998) (applying Massachusetts law to admission of prior consistent statements; no constitutional dimension to analysis); Commonwealth v. Jiles, 428 Mass. 66, 73-75, 698 N.E.2d 10, 14-16 (1998) (evaluating admission of written statement under Massachusetts's "miscarriage of justice" standard); United States v. Alzanki, 54 F.3d 994, 1008 (1st Cir. 1995) (considering out-of-court statements under Federal

---

[3] [Compare Supp. App., Exh. 5 at pp. 16-19 with Petition at ¶ 12 and attachment thereto at pp. 50-51].

7

Rules of Evidence; straightforward evidentiary question not analyzed on constitutional grounds), cert. denied, 516 U.S. 1111 (1996); Commonwealth v. Mayfield, 398 Mass. 615, 629, 500 N.E.2d 774, 783 (1986) (discussing when prior consistent statements are admissible under Massachusetts law); Commonwealth v. Daye, 393 Mass. 55, 56, 469 N.E.2d 483, 485 (1984) (ruling on the adoption of Proposed Rule of Evidence 801(d)(1)(A), which would permit the introduction of prior *in*consistent statements under certain circumstances); United States v. Winchenbach, 197 F.3d 548, 556-59 (1st Cir. 1999) (considering admission of testimony pursuant to Fed. R. Evid. 608 and 613; no mention of United States Constitution, Sixth Amendment or other constitutional rights); Commonwealth v. Swenson, 368 Mass. 268, 273, 331 N.E.2d 893, 897 (1975) (upholding admission of extrajudicial identification under Massachusetts common law); Commonwealth v. Gunter, 427 Mass. 259, 264, 692 N.E.2d 515, 520-21 (1998) (reiterating established Massachusetts law on the admissibility of out-of-court identifications; no federal constitutional element to decision).[4]

It is true that Josselyn mentioned the right to a "fair trial" in both the heading and concluding paragraph of his argument. [See Supp. App., Exh. 5 at pp. 16, 19]. These appeared as isolated "catch-all" statements, without any developed argument or citation to any case-law. The First Circuit has repeatedly held that such unadorned references to broad rights do not satisfy the exhaustion requirement. See, e.g., Martens, 836 F.2d at 717; Dougan v. Ponte, 727 F.2d 199, 201

---

[4] Indeed, in two of these decisions, the court explicitly stated that it was not undertaking any kind of constitutional analysis. See Jiles, 428 Mass. at 74, 698 N.E.2d at 15; Daye, 393 Mass. at 65 n.12, 469 N.E.2d at 490 n.12 (noting that the parties had not made a constitutional attack). Clearly, citing decisions which expressly do *not* have a constitutional dimension does nothing to "alert even the most perspicacious of jurists to the embedded constitutional claim." Adelson, 131 F.2d at 263.

(1st Cir. 1984); Gagne, 835 F.2d at 7.

Dougan and Gagne are directly on point. In Dougan, for example, the prisoner's habeas petition challenged both the admission of certain evidence and the prosecutor's closing argument. 727 F.2d at 200. The prisoner (Dougan) claimed that he had raised these objections as federal claims in state court because his state brief alleged that he had been denied a fair trial. Id. at 201. Like Josselyn's ALOFAR, however, Dougan's state brief did not cite to any constitutional authorities or put forth any constitutional arguments. Id. The First Circuit ruled that the bare references to an unfair trial did not alert the state courts to Dougan's alleged constitutional claims. The First Circuit explained that "[a]lleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim." Id. at 201 (quoting Kirksey v. Jones, 673 F.2d 58, 60 (2nd Cir. 1982)). This is because "[s]tate court briefs routinely characterize a variety of errors as a denial of a fair trial, conveying the thought that the error, simply as a matter of state law, warrants a new trial." Id. (quoting Kirksey, 673 F.2d at 60). Consequently, the First Circuit concluded that Dougan's unembellished references to an "unfair trial" did not satisfy the exhaustion requirement. Id.

In Gagne, the First Circuit similarly rejected the petitioner's contention that he had exhausted a claim for prosecutorial misconduct:

> The portion of the briefs dealing with prosecutorial misconduct contained only one oblique reference to constitutional rights. In the issue caption, the defendant alleged that he had been denied his "rights to a fair trial and due process of the law." The only other arguable reference was a repetition of the words "fair trial" within the body of the argument. This does not meet the [exhaustion] requirement.

835 F.2d at 7.

Applying Dougan and Gagne to this case, it is clear that Josselyn did not satisfy the exhaustion doctrine by mentioning the right to a "fair trial." Stated differently, Josselyn's repetition of the words "fair trial" simply did not set forth the claim he now asserts, i.e., that the admission of the prior consistent statements violated his Sixth Amendment right to confront and cross-examine witnesses. See Dougan, 727 F.2d at 201; Gagne, 835 F.2d at 7. See also Mele, 850 F.2d at 819 (federal issue must be presented "face up and squarely" to the state court); Adelson, 131 F.2d at 262 (petitioner must "elucidate the legal foundation of his federal claim" in such a way that its federal quality is "readily apparent" to the state court). Because Josselyn did not satisfy the exhaustion doctrine, the petition should be dismissed as unexhausted. Id.

### D. Josselyn Presented Grounds Three and Five to the Appeals Court as Matters of State Law.

As previously discussed, the exhaustion doctrine requires a prisoner to give the state courts one full and fair "opportunity to resolve federal constitutional claims" before those claims are presented in a federal habeas petition. O'Sullivan, 526 U.S. at 845. To satisfy this mandate, a state prisoner must "invok[e] one complete round of the State's appellate review process." Id. Moreover, it is well settled that "[r]aising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion." Gunter v. Maloney, 291 F.3d 74, 81 (1st Cir. 2002). As the Supreme Court has explained, "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless" the state court finds there are important and special considerations, the claim has not been fairly presented. Castille v. Peoples, 489 U.S. 346, 351 (1989). Consequently, when a prisoner does not have the right of appeal to the state's highest court, he must present his federal

claims to both the intermediate appellate court and the state's highest tribunal. See, e.g., id.; O'Sullivan, 526 U.S. at 845.

In this case, Josselyn had a right to direct review by the Massachusetts Appeals Court, but could only seek discretionary review with the SJC. [See, e.g., Supp. App., Exh. 5]. As a result, Josselyn was required to present the federal nature of his claims to both the Massachusetts Appeals Court and the SJC. See, e.g., Castille, 489 U.S. at 351; O'Sullivan, 526 U.S. at 845. Nevertheless, Josselyn failed to raise the federal nature of Grounds Three or Five to the Massachusetts Appeals Court.

### 1. Ground Three.

In Ground Three, Josselyn contends that the prosecutor improperly appealed to the jury's sympathy when he asked them to think about the real victims in the robberies, thereby violating his federal constitutional rights to due process and a fair trial. [See Petition at ¶ 12 and attachment thereto at pp. 41-44]. When Josselyn was in the Appeals Court, however, he presented this claim solely as a matter of state law.

In particular, Josselyn simply argued that the prosecutor "unlawfully preyed" upon the jury's sympathy and that this constituted an "error." [See Supp. App., Exh. 2 at pp. 39, 40]. Moreover, Josselyn supported this argument by citation to state cases decided on state-law grounds. [Id. at pp. 38-40]. See, e.g., Commonwealth v. Ramirez, 46 Mass. App. Ct. 925, 928, 709 N.E.2d 830, 833 (1999) (examining closing argument under Massachusetts's "miscarriage of justice" standard); Commonwealth v. Graziano, 368 Mass. 325, 331 N.E.2d 808 (1975) (same); Commonwealth v. Nordstrom, 364 Mass. 310, 316, 303 N.E.2d 711, 715 (1973) (same). None of these cases addressed the prosecutor's closing argument in constitutional terms. Id. See also

Commonwealth v. Burnett, 371 Mass. 13, 18-19, 353 N.E.2d 665, 668 (1976) (because prisoner did not timely object to closing argument, court reviewed only for reversible error); Commonwealth v. Worcester, 44 Mass. App. Ct. 258, 264, 690 N.E.2d 451, 455 (1998) (finding that certain remarks in the state's closing argument were "improper;" reviewing other closing remarks for a "substantial risk of a miscarriage of justice" under M.G.L. c. 278, § 33E).

While Josselyn also cited to two federal decisions, neither aids his case. [See Supp. App., Exh. 2 at p. 40]. Both decisions merely analyzed a federal prosecutor's closing argument for error under federal common law. See United States v. Whiting, 28 F.3d 1296, 1302 (1st Cir. 1994) (closing argument evaluated for "plain error"); United States v. Levy-Cordero, 67 F.3d 1002, 1009 (1st Cir. 1995) (reviewing "improper" closing for prejudicial error). The cases simply did not involve a claim that the prosecutor's closing violated the Due Process Clause (or any other aspect of the Constitution). Id. These cases therefore did not – indeed, could not – cast Josselyn's summation argument as Due Process claim. See, e.g., Gagne, 835 F.2d at 7 ("Although [petitioner] cited two federal cases, neither contains an analysis of constitutional law;" reliance on non-constitutional federal decisions does *not* satisfy exhaustion doctrine).

Not every error committed during closing argument rises to the level of a due process violation. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974). In this case, when Josselyn objected to the prosecutor's "sympathy appeal," he did not invoke any constitutional rights or proscriptions. [See Supp. App., Exh. 2 ]. His argument did not include any constitutional analysis or contain any of the "trappings" generally associated with a federal claim, such as

> specific constitutional language, constitutional citation, appropriate

> federal precedent, substantive constitutional analogy, argument with no masking state-law character and the like – [that] would in all likelihood alert a reasonable jurist to the existence of a federal question.

Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989).

In short, Josselyn pressed his jury-sympathy claim solely as a matter of state law, with reliance on state-law cases and federal common law. Because Josselyn did not present Ground Three to the Appeals Court as a federal claim, Ground Three was not properly exhausted. See, e.g., Adelson, 131 F.2d at 263 (in state court, defendant based his argument "only upon Massachusetts case law and debated the assignment of error exclusively in state-law terms;" defendant therefore failed to exhaust his state-court remedies). Josselyn's petition therefore should be dismissed as unexhausted. Id.

### 2. Ground Five (Prior Consistent Statements).

As discussed above, Josselyn did not present the federal nature of Ground Five – which challenges the admission of prior consistent statements – to the SJC. See supra at Section C. Josselyn's argument to the SJC on prior consistent statements essentially mirrored the argument he made in his Appeals Court brief. [Compare Supp. App., Exh. 5 at pp. 16-19 and Supp. App., Exh. 2 at pp. 42-46]. Consequently, for the same reasons set forth in Section C above, Josselyn failed to present Ground Five to the Appeals Court. This claim therefore is (twice) unexhausted. The petition should be dismissed. See, e.g., Adelson, 131 F.2d at 263.

## Conclusion

For the foregoing reasons, the respondent respectfully requests that the Court dismiss Josselyn's petition for a writ of habeas corpus.

Respectfully submitted,

THOMAS F. REILLY,
ATTORNEY GENERAL

Dated: September 1, 2004

*/s/ Natalie S. Monroe*
Natalie S. Monroe (BBO# 562383)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2833

## Certificate of Service

I, Natalie S. Monroe, hereby certify that, on September 1, 2004, I caused to be served a true and correct copy of the foregoing document by mailing a copy of the same by first-class mail, postage prepaid, and addressed to the petitioner's counsel, Rosemary C. Scapicchio, Esq., Four Longfellow Place, Suite 3703, Boston, Massachusetts 02114.

*/s/ Natalie S. Monroe*