UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID JOSSELYN,            )
    Petitioner        )
                            )
    v.                 )     CV # 04-10621-GAO
KATHLEEN DENNEHY          )
    Respondent        )

**PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS HIS WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The petitioner, David Josselyn, opposes the respondent's Motion to Dismiss and submits this memorandum of law in opposition. The respondent's legal argument is based almost entirely on a crabbed reading of the First Circuit decision in Mele v. Fitchburg District Court, 850 F.2d 817 (1st Cir. 1988), which outlined the obligations of a habeas corpus petitioner to first demonstrate that he has exhausted available state remedies to be entitled to a review of his federal constitutional claims. However, this circuit's jurisprudence in this area did not become frozen in time with Mele. Subsequent decisions have refined its analysis of the exhaustion requirement codified in 28 U.S.C. §§ 2254(a) and (c). See Barresi v. Maloney, 96

1

F.3d 48 (1st Cir. 2002); <u>Scarpa v. DuBois</u>, 38 F.3d 1 (1st Cir. 1994). The law of this circuit, taken in its entirety rather than by selective citation, supports the petitioner's assertion that he has fully satisfied the exhaustion requirement of the statute in accordance with this circuit's guidelines.

<u>Prior Proceedings</u>

The Commonwealth alleged that the petitioner, David Josselyn, was involved in a string of armed robberies all taking place within two hours of one another on September 22, 1996. The Commonwealth alleged that Josselyn robbed an Osco Drug in Westford, a Sunoco in Chelmsford and a Home Depot in Tewksbury.

The initial police reports and witnesses' statements describe three different people.(R-15-29). The suspect was clean-shaven for two robberies and had dark stubble for another.( 2-79-82; 3-31). The height of the suspect ranged from five feet, five inches to six feet, while his weight ranged from 150 to 200 pounds.(2-41-41; 3-31). The suspect's hair color ranged from blond to black with gray in it.(2-79,82,3-31).

On November 20, 1996, a Middlesex Grand Jury indicted Josselyn on three counts of armed robbery; one count of carrying a firearm without a license; one count of

2

discharging a firearm within 500 feet of a dwelling; and three counts of being a habitual offender.(96-02070-001005).(R-1). On February 19, 1998 trial commenced before Garsh, J. (R-5). On February 26, 1998 the jury convicted Josselyn on all counts. (R-5). The trial court postponed sentencing pending the outcome of the second trial on the habitual offense. (R-6). On March 3, 1998, Josselyn waived his right to a trial on the habitual offenses and pled guilty to those offenses. (R-6).

On the armed robberies, the trial judge sentenced Josselyn to two life sentences to run concurrently with each other and a twenty-year sentence to run concurrently with the two life sentences.(R-6). On the firearms offense, the trial judge sentenced Josselyn to a two to three year sentence to run concurrently with the life sentences.(R-6). The discharge of a firearm within 500 feet of a dwelling was placed on file.(R-6). On March 6, 1998 Josselyn filed his notice of appeal.(R-6). On September 26, 2002, the Massachusetts Appeals Court affirmed Josselyn's conviction in an unpublished opinion. Josselyn filed an Application for Further Appellate Review, which was denied by the Supreme Judicial Court on April 2, 2003.

**ARGUMENT**

   I.   **THE PETITIONER HAS EXHAUSTED HIS STATE CLAIMS OF FEDERAL CONSTITUTIONAL VIOLATIONS IN ACCORD WITH FIRST CIRCUIT GUIDELINES.**

**Petitioner has fully exhausted all claims.**

In order to obtain review of constitutional claims in a federal forum, a habeas petitioner in state custody is required to demonstrate that "the substance of those claims has been fairly presented to the state's highest court." Barresi v. Maloney, 296 F.3d at 51 (1st Cir. 2002). The petitioner must show that "he has tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Casella v. Clemons, 207 F.3d 18, 29 (1st Cir. 2000). But there is no requirement that a habeas petitioner express his federal claims in precisely the same manner in both the state and federal courts. See Picard v. Connor, 404 U.S. 270, 277-78 (1971)(holding claims advanced by petitioner before state's highest court must be "substantially equivalent" of those raised in federal habeas petition).

In noting that there are "myriad ways in which a petitioner might satisfy" their burden, this circuit provided the following examples:  "(1) citing a specific provision of the Constitution; (2) presenting the substance

4

of a federal constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a specific right guaranteed by the Constitution." Barresi, 296 F.3d at 51 (1st Cir. 2002), citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). This list, however, "does not purport to be exhaustive." Id. One such example of exhaustion is where "an individual's claim, arising under and asserted in terms of state law, may, as a practical matter, be indistinguishable from one arising under federal law." Nadworney v. Fair, 872 F.2d 1093, 1099 (1st Cir. 1989). Accordingly, each case where a petitioner is alleged to have failed to exhaust his state remedies "is both sui generis and fact-driven, turning on its own unique circumstances. Barresi, 296 F.3d at 52 (1st Cir. 2002), citing Adelson v. DiPaola, 131 F.3d 259, 262 (de novo appellate review of district court's dismissal of habeas petition for want of exhaustion is case-specific).

The respondent correctly points to the application for further appellate review (ALOFAR) as a crucial pleading which must be considered in determining whether the petitioner has presented his claims to the S.J.C. within the "four corners" of that application. See Mele, 850 F.2d at 823. However, this circuit court of appeals has stated

that "while our inquiry must focus on the 'four corners' of the ALOFAR, we have never held that appellate review is confined to an examination of that pleading in isolation. Rather . . . in certain circumstances, the pleadings and filings submitted by a habeas petitioner to lower state courts (e.g., motion for a new trial or a brief submitted to an immediate appellate court) provide 'a backdrop against which his later filings [must] be viewed' . . . In fact . . . we [have] explicitly rejected the proposition that prior circuit precedent restrict the exhaustion inquiry exclusively to an examination of the petitioner's ALOFAR." Barresi, 296 F.3d at 52 (1st Cir. 2002), citing Scarpa, 38 F.3d at 7; Bradford v Baystate Medical Center, 415 Mass 202 at 204 (1993). Yet this is precisely the kind of restricted analysis the respondent urges this court to employ. See Respondent's Memorandum of Law in Support of the Motion to Dismiss.

In addition, this Circuit has further cautioned that the analysis concerns issues of probability - "whether it is more likely or not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented" - and involves whether the filings were "minimally sufficient" to apprise the state's highest court

6

of the federal constitutional dimension of his appeal. Barresi, 296 F.3d at 52 (1st Cir. 2002)(citations omitted).

**Grounds Two and Four are fully exhausted.**

Here, grounds Two and Four of the Petition were sufficiently presented to the Supreme Judicial Court to satisfy the exhaustion requirement as interpreted by Barresi, 269 F.3d at 52. In his brief to the Appeals Court, Petitioner argued that the prosecutor's comment misstating the evidence, that the same jacket and same car were used in all three robberies, violated Josselyn's right to a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.(Brief pp 35). Petitioner went on to inform the state court that a prosecutor's misstatement of the evidence constitutes reversible error citing Davis v Zant, 36 F.3d 1538 (11th Cir. 1994).(Brief pp 37). Petitioner argued that "The prosecutor's excessive arguments here, created evidence linking the defendant to all three robberies and thus relieved the Commonwealth of their burden of proving each and every element of each of the indictments beyond a reasonable doubt. Because the Commonwealth's theory was that the same person robbed all three stores, the prosecutors' fabrication of evidence linking the three crimes went to the heart of Jossselyn's defense of mistaken

7

identity. The cumulative effect of the prosecutor's ill-advised rhetoric had the effect of minimizing the jury's role as fact finders. United States v. Jones, 482 F.2d 747 (D.C. Cir. 1973)." (Brief PP. 38). Clearly under a proper reading of the backdrop of the case, Josselyn has sufficiently exhausted ground Two.

Likewise, petitioner has exhausted ground Four of his petition. In Ground Four, petitioner argued to the state court that "the trial judge erroneously instructed the jury that "innocent mis-recollections" happen frequently and ordered the jury to disregard any inconsistencies of witnesses that they determined were minor or not intentional." (Brief pp. 47). The petitioner argued that the erroneous language of the jury charge "bolstered the Commonwealth's identification witnesses testimony by instructing the jury that they could ignore witnesses inconsistent statements as to identification of Josselyn as the robber, if they determined that the inconsistency was on a minor matter or if the inconsistency was not intentional by the witness." (Brief. Pp. 48). Petitioner argued that: "it is well settled that when a dispute of fact exists the Sixth Amendment to the United States constitution guarantees an accused the right to have a jury decide the question." Lanigan v. Maloney, 853 F.2d 40, 49-

8

50 (1st Cir. 1988); Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (Brief pp. 48). Finally the petitioner argued that this "erroneous instruction struck at the heart of Josselyn's theory of mistaken identity, and undermined any effort by the defense to cast doubt on the reliability of the identification witnesses testimony" such that reversal was required. (Brief pp. 48). The petitioner then cited Carter v. Montgomery, 769 F2d. 1537 (11th Cir. 1985). In his AOFAR the petition cites Lanigan v. Maloney, 853 F.2d 40, 49-50(1st Cir. 1988); Duncan v, Louisiana, 391 U.S. 145, 149 (1968); and Carter v. Montgomery, 769 F2d. 1537 (11th Cir. 1985) for the same propositions he cited these cases in his Appeals Court brief. As such, under the reasoning in Barresi, 296 F.3d at 52(1st Cir. 2002), the petitioner has fully exhausted this claim.

**Ground Five of Josselyn's Petition if fully exhausted**

The petitioner made explicit federal constitutional claims in his brief to the Appeals Court and in his Application for Further Appellate Review. Specifically, Josselyn argued that the admission of prior consistent statements violated his due process rights under the Sixth and Fourteenth Amendments to the United States Constitution. Josselyn made specific claims that "The Commonwealth's use of Detective McEnaney to bolster Irene

9

Anderson's lack of identification of Josselyn violated Josselyn's right to a fair trial because it bolstered Ms. Anderson's inability to identify Josselyn as the robber. . . . In effect, the Commonwealth used this veteran detective to make a defacto identification of Josselyn through Ms. Anderson absent any foundation that Ms. Anderson had in fact made these statements to Detective McEnaney. This defacto impermissible identification of Josselyn was the only connection the Commonwealth offered to prove Josselyn committed the robbery of Osco Drug." (Brief pp 46). Contrary to the respondent's claims, petitioner specifically cited to Maurer v. Department of Corrections, 32 F.3d 1286 (8th Cir. 1994) in support of his federal claims. Maurer was a federal habe petition that was granted based upon the 8th Circuit's finding that the admission of testimony by a prosecution witness that complainant seem sincere when she said she was raped rendered trial "fundamentally unfair" in violation of Maurer's federal due process rights.

The ALOFAR filed in this case made specific reference to the due process claim (ALOFOR pp. 16) and cited federal case law. In addition, the ALOFAR was submitted with a copy of the decision of the Appeals Court in Commonwealth v. Josselyn, which specifically referenced Josselyn's claim

10

that his rights were violated when the Commonwealth introduced prior consistent statement to corroborate Josselyn's identification. This is the "backdrop" against which later filings should be viewed according to Barresi.

Here, the petitioner made repeated references in lower court filings to federal constitutional rights and to state cases which dealt with issues that were, as a practical matter, indistinguishable. He discussed the relevant facts in the ALOFAR and attached a copy of the Appeals Court decision. That Josselyn's application for further appellate review was limited by the Massachusetts Rules of Appellate Procedure to no more than ten pages, and requires Josselyn to attach a copy of the Appeals Court decision, clearly indicates that the Court would not limit its review to the ten pages of the application. Mandating that Josselyn reduce his week long trial and appellate brief of 50 pages to ten pages to satisfy the exhaustion requirement of the federal habe is not what the drafter's of the Massachusetts Rules of Appellate Procedures had in mind. Specifically, the Reporter's Notes -1973 (See attached), noted that "Further review is analogous to the granting of certiorari by the Supreme Court of the Untied States. Applications for such review will not ordinarily entail oral argument; and if granted , review will usually be

11

argued on the briefs and record appendix filed in the Appeals Court." As such, the drafters of the Rules intended that an Application for Further Appellate Review incorporate all issues raised by a defendant in his appellate brief. It is therefore highly unlikely that given this substantial record a reasonable jurist would not recognize the federal constitutional dimensions of the petitioner's claims. Therefore, the petitioner's claims were fairly presented to the state's highest court and he has met his burden to show exhaustion in accordance with Barresi, Scarpa, and Nadworney.

### B. Josselyn Fully Exhausted Ground Three.

This claim was presented almost word-for-word in the ALOFAR and the Brief of the Appellant before the appeals court. Specifically, petitioner alerted the state Court in Ground Two that "Prosecutorial error in closing arguments can be found to amount to a denial of Constitutional Due Process." (Brief pp. 19). Petitioner then cited directly to Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1996. Petitioner then expounded on his federal constitutional claim when he explained to the state court that "Under the standard in Donnelly, the question is whether the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair."

(Brief pp. 19). Petitioner then cited <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2nd Cir. 1990)(citing Donnelly at 645) (Brief pp 19). Petitioner then went on to inform the state court that "In a federal constitutional analysis, a court must decide whether . . . 'the cumulative effects of the prosecutor's improper statements denied the defendant a fundamentally fair trial, where each instance of prosecutorial misconduct standing alone might not justify reversal." <u>Meachum</u> supra at 335-337 n. 11.)(AOFAR pp 19). Petitioner went on to argue to the state court that "Whether a closing argument is so egregious so as to render the entire trial fundamentally unfair, 'by creating an overwhelming prejudice in the eyes of the jury' should be evaluated in the context of the entire argument." <u>Marin v. Parker</u> 11 F. 3d, 613, 616 (6th Cir. 1993); <u>U.S. v. Payne</u>, 2 F13d 706, 715-716 (6th Cir. 1993)(Court may consider whether the improper argument lessened the defendant's credibility); <u>Gravely v. Millis</u> 37 F.3d 779-790 (6th Cir. 1996);. . . <u>U.S. v. Manning</u> 23 F. 3d 570, 575 (1st Cir. 1994)(defendant's denied Due Process and a fair trial where the prosecutor's closing argument included false information by basing the Commonwealth's case on non-existent evidence.); <u>Di Losa v. Caine</u> 279 F.3d 259-265 (5th Cir. 2002)" (AOFAR pp19-20). As such, the petitioner's

13

appeals court brief and AOFAR presented three issues in relation to this claim and spent ten pages discussing them. The petitioner further cited federal precedent in the ALOFAR with respect to his claim that the court deprived him of a fair trial pursuant to the Sixth and Fourteenth Amendments.

Given this extensive backdrop, the issue raised by this claim was plainly in view to the state's highest court. The state and federal constitutional concerns are substantially identical - the right to a fair trial. The petitioner was not coy in presenting the issue squarely in his AOLFAR and in citing federal case law in support. The S.J.C. declined to hear the issue, but the only reasonable conclusion is that they were well aware of the federal constitutional dimensions of the petitioner's claims. That Josselyn also cited several state cases does not detract from his federal claim. Of the state cases cited, the state and federal constitutional concerns are the same - the right to a fair trial. This concept is so basic to the criminal law that any reasonable jurist would have recognized the federal implications of the petitioner's claim. Even if this Court were to conclude that the petitioner's claim could have been more consistently or artfully expressed, the standard is minimal sufficiency,

and the petitioner has surely exceeded that standard. See Barresi, 296 F.3d at 52 (1st Cir. 2002)(issue concerns whether filings were "minimally sufficient" to apprise the state's highest court of the federal constitutional dimension of the appeal).

Under such analysis Josselyn properly apprised the Supreme Judicial Court of his federal claims. Barresi again illuminates the task before this Court:

> Nevertheless, rather than impose "bright line" rules likely to prove overly restrictive, we think it appropriate to continue to focus primarily on the claims actually presented in the pleadings filed in the state's highest court -- the AOLFAR in the Commonwealth -- **but also to consider the "backdrop," comprised of earlier filed pleadings.**

Barresi, 296 F.3d 48, 53 (emphasis supplied). By that measure, this and the other claims in the petition were presented in a manner that was sufficient to apprise the state's highest court of the federal constitutional dimensions of those claims, thereby exhausting those claims with the meaning of 28 U.S.C. §§ 2254(a) and (c).

**II. In the alternative, if this Court should find that one or more grounds are not exhausted, Josselyn requests that the Court enter a stay.**

If the Court determines that Josselyn's petition contains both exhausted and unexhausted claims, this court has the authority to stay any decision on the petition to

15

give Josselyn the opportunity to return to state court and exhaust his unexhausted claims. Calderon v. United States District Court, 144 F3d. 618, 620 (9th Cir. 1998)(a district court may hold a habeas corpus petition with exhausted claims in abeyance). In the alternative, the Court can dismiss Josselyn' petition without prejudice, to give him an opportunity to exhaust any unexhausted claims. Rose v. Lundy, 455 U.S. 509, 510 (1982). However, if the petitioner is not successful in state court, upon his return to federal court, his entire petition is scrutinized under a stricter standard. The First Circuit has "indicated that the district courts presented with mixed petitions should take seriously any request for a stay." Norwaczyk v. Warden, New Hampshire State Prison, 299 F.3d 69,79 (1st Cir. 2002)(citing Neverson v. Bissonnette, 261 F.3d 120 (1st Cir. 2001), and Delaney v. Mateasanz, 264 F.3d 7 (1st Cir. 2001). As such, the better practice is to stay the petition to allow Josselyn' to exhaust any unexhausted claims.

## CONCLUSION

Based on the foregoing, the petitioner requests that this Court deny the Respondents Motion to Dismiss and order a hearing on the merits of Josselyn's petition.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by first class mail, postage prepaid or by hand delivery.

Dated: 2/2/05
Signed: RCS

Respectfully Submitted,
DAVID JOSSELYN
By His Attorney

_____
Rosemary Curran Scapicchio
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
(617) 263-7400
BBO # 558312

17