UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                              )
DAVID JOSSELYN,               )
        Petitioner,           )
                              )
v.                            )        CIVIL ACTION NO.04-10621 -GAO
                              )
KATHLEEN DENNEHEY,            )
        Respondent.           )
_____)

**PETITIONER'S APPLICATION FOR A CERTFICATE OF APPEALABILITY**

INTRODUCTION

Petitioner Josselyn here seeks a "certificate of appealability" (COA) under 28 U.S.C. sec. 2253, that he may then pursue an appeal of this Court's dismissal of his petition for a writ of habeas corpus in the First Circuit. The COA threshold is a low one, designed to weed out only the most unworthy appeals. Under the Supreme Court's interpretation of section 2253, this Court must grant the petitioner's COA if reasonable jurists could find that the Court's dismissal of Josselyn' petition for writ of habeas corpus was "debatable"; thus, even if this Court is completely convinced that the balance did ultimately tip in favor of dismissing of Josselyn' petition, a COA should still issue if other reasonable jurists might have found in Josselyn' favor. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); 28 U.S.C. Sec. 2253.

The petitioner here is serving a life sentence; in light of the Supreme Court's holding that a District Court may abuse its discretion if it denies a motion to stay a petition containing exhausted and unexhausted claims, a fair minded person could clearly debate whether the District Court ought to have denied Josselyn' Motion to Stay after

1

finding, over Josselyn objections, that Josselyn' petition contained both exhausted and unexhausted claims. See Rhines v. Weber, 125 S.Ct. 1528 (2005).

I.  THE STANDARD FOR ISSUANCE OF A CERTIFICATE OF APPEALABILITY IS MET BECAUSE (1) REASONABLE JURISISTS WOULD DEBATE THE CORRECTNESS OF THE PROCEDURAL RULING IN THIS CASE; AND (2) PETITIONER STATED A VALID CLAIM OF CONSTITUTIONAL RIGHTS DENIED.

This Court should consider each issue separately under application for COA, and grant a COA for those issues that meet the standards set out in 28 U.S. C. sec 2253. See also Bui v. DePaolo, 170 F 3d. 232, 237 (1st Cir. 1999). The Supreme Court mandates that the District Court apply distinct tests for the issuance of a COA for a "denied on the merits" claim versus issuance of a COA for a "procedurally denied" claim. Here, the petitioner's application for a COA should be assessed under the "procedurally denied" criteria.

In Slack v. McDaniel 529 U.S. 473, 484 (2000), the Supreme Court ruled that a COA should be granted for a procedurally dismissed petition if the petitioner makes two threshold showings: (1) "that jurists of reason would find it debatable whether the district court was correct in its procedural rulings"; and (2) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack 529 U.S at 484, Gaskins v. Duval 183 F.3d 8 (1st Cir. 1999) Evicci v. Commissioner of Corrections 226 F.3d 26, 27 (1st Cir. 2000); Mateo v. United States 310 F.3d 39, 40 (1st Cir. 2002).  In order to prevail on an application for a COA a petitioner need not demonstrate that "he should prevail on the merits . . . ; he must demonstrate [only] that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]" or that the questions are "adequate to deserve

2

encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880 at 893 and note 4 (1983); See also Miller-El v. Cockrell, 537 U.S 322 (2003).

The pivotal inquiry is thus the meaning of "debatable" as applied by Barefoot and its progeny. The Miller-El Court emphatically stated that the "debatable among jurists of reason" prong is designed to be permissive, rather than restrictive, and reiterated that it "do[es] not require petitioner to prove, before the issuance of COA, that some jurists would grant the petition for habeas corpus". Miller-El 537 U.S. at 336. Indeed a claim can be "debatable" even if, after the COA has been granted and the case has received full consideration, every jurist of reason might agree that petitioner should not prevail. Id at 338. According to the Miller-El court, a full consideration of the factual or legal bases adduced in support of the claim is statutorily forbidden when assessing the "debatability" of a claim for the purposes of issuing a COA. Id at 336.

As to the substance of his procedurally barred claims, Josselyn must show merely that the claim is "not frivolous on its face." See Slack 529 U.S. at 484; See also Evicci v. Commissioner of Corrections 226 F.3d 26, at 28 n.1 (1st Cir. 2000). Where a petitioner's habe was dismissed on procedural grounds, a COA should issue if the petitioner shows that his petition states facially valid claims for relief. Slack 529 U.S. at 484. This means that the courts should "simply take a 'quick look' at the face of the complaint to determine whether the petitioner has facially allege[d] the denial of a conditional right." Lambright v. Stewart, 220 F.3d 1022, 1026 (9th Cir. 2000); Evicci 226 F.3d at 28 n.1 (citing Lambright); Jefferson v. Wellborn, 222 F.3d 286, 289 (7th Cir. 200); Gibson v. Klinger 232 F.3d 799, 803 (10th Cir. 2000).

    II.      THE PROCEDURAL DISMISSAL WAS "DEBATEBLE"

>BECAUSE IT WAS CONTRARY TO THE SUPREME
>COURT'S POSITION ON THE PROPER RESOLUTION OF
>MIXED PETITIONS PURSUANT TO RHINES V. WEBER
>125 S.Ct. 1528 (2005).

The Supreme Court in Rhines finally resolved the question of how to handle mixed petitions of exhausted and unexhausted claims and addressed the "stay and abeyance" procedure many District Courts had adopted. In short, the Supreme Court held that a District Court has the discretion to stay a petition containing exhausted and unexhausted claims and to hold the petition in abeyance pending the filing of a motion to exhaust in state court.  See Rhines 125 S.Ct. 1533.  The Supreme Court specifically notes:

>Fourteen years before Congress enacted AEDPA, we held in Rose v. Lundy 455 U.S. 509, 102 S.Ct. 1198 (1982) federal district courts may not adjudicate mixed petitions but must give state courts the first opportunity to decide a petitioner's claims, imposed a total exhaustion requirement, and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court. Rhines, 125 S.Ct. at 1533.

At that time, there was no statute of limitations on federal habeas petitions. But that changed with AEDPA, which preserved Lundy's total exhaustion requirement while imposing a one-year limitations period, which is tolled during the pendency of a state, but not a federal habeas petition. See Id. As a result, petitioners "run the risk of forever losing their opportunity for federal review of their unexhausted claims. The gravity and difficulty of this problem has led some district courts to adopt the "stay-and abeyance" procedure at issue." Rhines, 125 S.Ct at 1534.

While the Supreme Court left the stay and abeyance decision to the sound

4

discretion of the district court, the Court nonetheless noted it would likely be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner (1) had a good cause for his failure to exhaust, (2) his unexhausted claims are potentially meritorious and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. It is uncontorverted that in such circumstances the District Court should stay, rather than dismiss the mixed petition. Rhines, 125 S.Ct at 1535.  The Rhines Court went so far as to state that a stay and abeyance in a mixed petition is nearly presumptive because the petitioners' interest in obtaining federal review of his claims outweighs the competing interest in finality and speedy resolution of federal petitions. See Id.

      Yet in Josselyn the District Court took a position contrary to Rhines, and absent any support in the record or an evidentiary hearing, the court concluded that Josselyn and his counsel made a "deliberate decision" to abandon claims raised in his brief to the Appeals Court when he filed his Application for Further Appellate Review (ALOFAR). Following the reasoning of the Rhines Court, the District Court's failure to stay Josselyn' petition is an abuse of discretion because the District Court ignored both pertinent state law and the state rules of appellate procedure in concluding Josselyn' claims were not exhausted. Specifically, both the Massachusetts Rules of Appellate Procedure and the Massachusetts Supreme Judicial Court holding in Bradford v. Baystate Medical Center 425 Mass. 202 (1993) state that the SJC will consider all issues briefed by an appellant to the Appeals Court in determining whether to grant an application for Further Appellate Review, whether or not all issues actually appear in his ALOFAR. The District Court asserts that Josselyn defaulted by failing to state in his ALOFAR all of the issues briefed

5

on appeal; yet Josselyn simply followed the Massachusetts Rules of Appellate Procedure with the expectation of the protection afforded to those who follow such procedure. Hence, Josselyn has "good cause" for any procedural default perceived by the District Court, as such procedure default was triggered by adherence to the Massachusetts state rules, Josselyn' claims had merit, and Josselyn did not engage in any intentional dilatory litigation. The COA should issue.

   III.   A COA SHOULD ISSUE BECAUSE, VEIWED WITHIN THE PROCEDURAL PARADYM CREATED BY THE MASSACHUSETTS RULES OF APPEALLATE PROCEDURE AND THE MASSACHUSETTS SUPREME JUDICIAL COURT'S HOLDING IN <u>BRADFORD V. BAYSTATE MEDICAL CENTER</u>, 425 Mass. 202 (1993), AND APPLIED BY THE FIRST CIRCUIT, PETITIONERS ALOFAR STATES AT THE VERY LEAST FACIALLY VALID CLAIMS THAT HIS CONSTITUTIONAL RIGHTS WERE DENIED.
.

In order to obtain review of constitutional claims in a federal forum, a habeas petitioner in state custody is required to demonstrate that "the substance of those claims has been fairly presented to the state's highest court." <u>Barresi v. Maloney</u>, 296 F.3d at 51 (1st Cir. 2002). The petitioner must show that "he has tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." <u>Casella v. Clemons</u>, 207 F.3d 18, 29 (1st Cir. 2000). But there is no requirement that a habeas petitioner express his federal claims in precisely the same manner in both the state and federal courts. See <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971)(holding claims advanced by petitioner before state's highest court must be "substantially equivalent" of those raised in federal habeas petition).

In noting that there are "myriad ways in which a petitioner might satisfy" their

6

burden the First Circuit provided examples, qualifying that the list was not intended to be comprehensive: "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a specific right guaranteed by the Constitution." Barresi, 296 F.3d at 51 (citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)). The First Circuit has noted other instances satisfying the burden, for example, "an individual's claim, arising under and asserted in terms of state law, may, as a practical matter, be indistinguishable from one arising under federal law." Nadworney v. Fair, 872 F.2d 1093, 1099 (1st Cir. 1989). Accordingly, each case where a petitioner is alleged to have failed to exhaust his state remedies "is both sui generis and fact-driven, turning on its own unique circumstances." Barresi, 296 F.3d at 52 (1st Cir. 2002), citing Adelson v. DiPaola, 131 F.3d 259, 262 (*de novo* appellate review of district court's dismissal of habeas petition for want of exhaustion is case-specific).

While the district court correctly points to the ALOFAR a crucial pleading in determining whether the petitioner has presented his claims to the S.J.C. within the "four corners" of that application, the district court misconstrues this to mean that the ALOFAR is to be viewed in isolation. See Mele, 850 F.2d at 823. To the contrary, Circuit has stated:

> ...while our inquiry must focus on the 'four corners' of the ALOFAR, we have never held that appellate review is confined to an examination of that pleading in isolation. Rather . . . in certain circumstances, the pleadings and filings submitted by a habeas petitioner to lower state courts (e.g., motion for a new trial or a brief submitted to an immediate appellate court) provide 'a backdrop against

7

> which his later filings [must] be viewed' . . . In fact . . . we [have] explicitly rejected the proposition that prior circuit precedent restrict the exhaustion inquiry exclusively to an examination of the petitioner's ALOFAR." <u>Barresi</u>, 296 F.3d at 52 (1st Cir. 2002), <u>citing</u> <u>Scarpa</u>, 38 F.3d at 7.

The District Court here employed the very kind of isolated review of the ALOFAR that the First Circuit rejected supra.

The First Circuit has further cautioned that the analysis concerns issues of probability - "whether it is more likely or not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented" - and involves whether the filings were "minimally sufficient" to apprise the state's highest court of the federal constitutional dimension of his appeal. <u>Barresi</u>, 296 F.3d at 52 (1st Cir. 2002)(citations omitted).

> A. <u>Grounds Two and Four of Josselyn's Petition Satisfy The Exhaustion Requirement In Light Of the "Backdrop" Stipulated By The First Circuit in *Barresi v. Maloney*, Because Josselyn Explicitly Stated To The SJC And Again In His ALOFAR That He Was Denied His Federal Constitutional Right To A Fair Trial.</u>

Here, grounds Two and Four of the petition were sufficiently presented to the Supreme Judicial Court to satisfy the exhaustion requirement as interpreted by <u>Barresi</u>, 269 F.3d at 52. In his brief to the Appeals Court, Petitioner argued that the prosecutor's comment misstating the evidence, that the same jacket and same car were used in all three robberies, violated Josselyn's right to a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.(Brief pp 35). Petitioner went on to inform the state court that a prosecutor's misstatement of the evidence constitutes reversible error citing <u>Davis v Zant</u>,36 F.3d 1538 (11th Cir. 1994).(Brief pp 37).

8

Petitioner argued that "The prosecutor's excessive arguments here, created evidence linking the defendant to all three robberies and thus relieved the Commonwealth of their burden of proving each and every element of each of the indictments beyond a reasonable doubt. Because the Commonwealth's theory was that the same person robbed all three stores, the prosecutors' fabrication of evidence linking the three crimes went to the heart of Josselyn's defense of mistaken identity.  The cumulative effect of the prosecutor's ill-advised rhetoric had the effect of minimizing the jury's role as fact finders. United States v. Jones, 482 F.2d 747 (D.C. Cir. 1973)." (Brief PP. 38).  Clearly under a proper reading of the backdrop of the case, Josselyn has sufficiently exhausted ground Two.

Likewise, petitioner has exhausted ground Four of his petition.  In Ground Four, petitioner argued to the state court that "the trial judge erroneously instructed the jury that "innocent mis-recollections" happen frequently and ordered the jury to disregard any inconsistencies of witnesses that they determined were minor or not intentional." (Brief pp. 47).  The petitioner argued that the erroneous language of the jury charge "bolstered the Commonwealth's identification witnesses testimony by instructing the jury that they could ignore witnesses inconsistent statements as to identification of Josselyn as the robber, if they determined that the inconsistency was on a minor matter or if the inconsistency was not intentional by the witness." (Brief. Pp. 48).  Petitioner argued that: "it is well settled that when a dispute of fact exists the Sixth Amendment to the United States constitution guarantees an accused the right to have a jury decide the question." Lanigan v. Maloney, 853 F.2d 40, 49-50 (1st Cir. 1988); Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (Brief pp. 48).  Finally the petitioner argued that this "erroneous instruction struck at the heart of Josselyn's theory of mistaken identity, and undermined

9

any effort by the defense to cast doubt on the reliability of the identification witnesses testimony" such that reversal was required. (LBrief pp. 48). The petitioner then cited Carter v. Montgomery, 769 F2d. 1537 (11th Cir. 1985).

In his AOFAR the petitioner cited Lanigan v. Maloney, 853 F.2d 40, 49-50(1st Cir. 1988); Duncan v, Louisiana, 391 U.S. 145, 149 (1968); and Carter v. Montgomery, 769 F2d. 1537 (11th Cir. 1985) for the same propositions he cited these cases in his Appeals Court brief. As such, under the reasoning in Barresi, 296 F.3d at 52(1st Cir. 2002), the petitioner has fully exhausted this claim.

    B.    <u>Ground Five of Josselyn's Petition, That His Rights Were Violated When the Commonwealth Introduced a Prior Inconsistent Statement To Corroborate His Identification, Was Specifically Referenced In the ALOFAR Citing Federal Law, And Submitted With A Copy OF the State Appeals Court Decision Referencing The Very Same Claim.</u>

The petitioner made explicit federal constitutional claims in his brief to the Appeals Court and in his Application for Further Appellate Review. Specifically, Josselyn argued that the admission of prior consistent statements violated his due process rights under the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, Josselyn asserted:

> The Commonwealth's use of Detective McEnaney to bolster Irene Anderson's lack of identification of Josselyn violated Josselyn's right to a fair trial because it bolstered Ms. Anderson's inability to identify Josselyn as the robber. . . . In effect, the Commonwealth used this veteran detective to make a defacto identification of Josselyn through Ms. Anderson absent any foundation that Ms. Anderson had in fact made these statements to Detective McEnaney. This defacto impermissible identification of Josselyn was the only connection the Commonwealth offered to prove Josselyn committed the robbery of Osco Drug. (Brief pp 46).

Contrary to the respondent's claims, petitioner specifically cited to <u>Maurer v. Department of Corrections</u>, 32 F.3d 1286 (8th Cir. 1994) in support of his federal claims. <u>Maurer</u> was a federal habe petition that was granted based upon the 8th Circuit's finding that the admission of testimony by a prosecution witness that complainant seem sincere when she said she was raped rendered trial "fundamentally unfair" in violation of Maurer's federal due process rights.

The ALOFAR filed in this case made specific reference to the due process claim (ALOFOR pp. 16) and cited federal case law. In addition, the ALOFAR was submitted with a copy of the decision of the Appeals Court in <u>Commonwealth v. Josselyn,</u> which specifically referenced Josselyn's claim that his rights were violated when the Commonwealth introduced prior consistent statement to corroborate Josselyn's identification. This is the "backdrop" against which later filings should be viewed according to <u>Barresi</u>.

Here, the petitioner made repeated references in lower court filings to federal constitutional rights and to state cases which dealt with issues that were, as a practical matter, indistinguishable.  He discussed the relevant facts in the ALOFAR and attached a copy of the Appeals Court decision.  That Josselyn's application for further appellate review was limited by the Massachusetts Rules of Appellate Procedure to no more than ten pages, and requires Josselyn to attach a copy of the Appeals Court decision, clearly indicates that the Court would not limit its review to the ten pages of the application. Mandating that Josselyn reduce his week long trial and appellate brief of 50 pages to ten pages to satisfy the exhaustion requirement of the federal habe is not what the drafter's of the Massachusetts Rules of Appellate Procedures had in mind.

11

Specifically, the Reporter's Notes –1973 (See attached), affirm: "Further review is analogous to the granting of certiorari by the Supreme Court of the Untied States. Applications for such review will not ordinarily entail oral argument; and if granted , review will usually be argued on the briefs and record appendix filed in the Appeals Court."  As such, the drafters of the Rules intended that an Application for Further Appellate Review incorporate all issues raised by a defendant in his appellate brief. It is therefore highly unlikely that given this substantial record a reasonable jurist would not recognize the federal constitutional dimensions of the petitioner's claims.  Therefore, the petitioner's claims were fairly presented to the state's highest court and he has met his burden to show exhaustion in accordance with Barresi, Scarpa, and Nadworney.

    C.    Ground Three Of Josselyn's Petition Dealt With Prosecutorial Error In The Closing Arguments, A Substantially Identical Concern Under Both The State And Federal Constitutional Rights to A Fair Trial, And Josselyn Briefed This Issue Using Federal Case Law to Both The Appeals Court And In His ALOFAR

This claim was presented almost word-for-word in the ALOFAR and the Brief of the Appellant before the Appeals Court.  Specifically, petitioner alerted the state Court in Ground Two that "Prosecutorial error in closing arguments can be found to amount to a denial of Constitutional Due Process." (Brief pp. 19). Petitioner then cited directly to Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1996).  Petitioner then expounded on his federal constitutional claim when he explained to the state court that "Under the standard in Donnelly, the question is whether the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." (Brief pp. 19).  Petitioner then cited Floyd v. Meachum, 907 F.2d 347, 353 (2nd Cir. 1990)(citing Donnelly at 645) (Brief pp 19).

Petitioner then went on to inform the state court, "In a federal constitutional analysis, a court must decide whether . . . 'the cumulative effects of the prosecutor's improper statements denied the defendant a fundamentally fair trial, where each instance of prosecutorial misconduct standing alone might not justify reversal." Meachum supra at 335-337 n. 11.)(AOFAR pp 19).  Petitioner argued to the state court that "Whether a closing argument is so egregious so as to render the entire trial fundamentally unfair, 'by creating an overwhelming prejudice in the eyes of the jury' should be evaluated in the context of the entire argument." Marin v. Parker 11 F. 3d, 613, 616 (6th Cir. 1993); U.S. v. Payne, 2 Fl3d 706, 715-716 (6th Cir. 1993)(Court may consider whether the improper argument lessoned the defendant's credibility); Gravely v. Millis 37 F.3d 779-790 (6th Cir. 1996);. U.S. v. Manning 23 F. 3d 570, 575 (1st Cir. 1994)(defendant's denied Due Process and a fair trial where the prosecutor's closing argument included false information by basing the Commonwealth's case on non-existent evidence.); Di Losa v. Caine 279 F.3d 259-265 (5th Cir. 2002)" (AOFAR pp19-20).

Petitioner's Appeals Court brief and AOFAR presented three issues in relation to this claim and spent ten pages discussing them. The petitioner further cited federal precedent in the ALOFAR with respect to his claim that the court deprived him of a fair trial pursuant to the Sixth and Fourteenth Amendments.

Given this extensive backdrop, the issue raised by this claim was plainly in view to the state's highest court.  The state and federal constitutional concerns are substantially identical - the right to a fair trial.  The petitioner was not coy in presenting the issue squarely in his AOLFAR and in citing federal case law in support.  The S.J.C. declined to hear the issue, but the only reasonable conclusion is that they were well aware of the

federal constitutional dimensions of the petitioner's claims.

That Josselyn also cited several state cases does not detract from his federal claim. Of the state cases cited, the state and federal constitutional concerns are the same - the right to a fair trial. This concept is so basic to the criminal law that any reasonable jurist would have recognized the federal implications of the petitioner's claim. Even if this Court were to conclude that the petitioner's claim could have been more consistently or artfully expressed, the standard is minimal sufficiency, and the petitioner has surely exceeded that standard. See Barresi, 296 F.3d at 52 (1st Cir. 2002)(issue concerns whether filings were "minimally sufficient" to apprise the state's highest court of the federal constitutional dimension of the appeal).

Under such analysis Josselyn properly apprised the Supreme Judicial Court of his federal claims. Barresi again illuminates the task before this Court:

> Nevertheless, rather than impose "bright line" rules likely to prove overly restrictive, we think it appropriate to continue to focus primarily on the claims actually presented in the pleadings filed in the state's highest court -- the AOLFAR in the Commonwealth -- **but also to consider the "backdrop," comprised of earlier filed pleadings**. Barresi, 296 F.3d 48, 53 (emphasis supplied).

By that measure, this and the other claims in the petition were presented in a manner that was sufficient to apprise the state's highest court of the federal constitutional dimensions of those claims, thereby exhausting those claims with the meaning of 28 U.S.C. §§ 2254(a) and (c).

Josselyn maintains that "reasonable jurists" could differ when deciding whether he has exhausted his state remedies. This is especially true where Josselyn argued to the

District Court that Massachusetts Rules of Appellate Procedure as well as case law from the Massachusetts Supreme Judicial Court <u>Bradford v. Baystate Medical Center</u> 425 Mass. 202 (1993), clearly indicated that the Massachusetts Supreme Judicial Court will consider all issues brief by an appellant to the Appeals Court, whether or not they appear in his application for further appellate review such that the exhaustion requirement is met if the claims appeared in the petitioners Appeals Court brief.  The different interpretations of the federal and state courts on the issue of what the SJC reviews in deciding an application for further appellate review demonstrate that "reasonable jurists" differ such that a COA should issue.

CONCLUSION

       For all of foregoing reasons, this Court should issue a COA.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by first class mail, postage prepaid or by hand delivery.

Dated:_____
Signed:_____

Respectfully Submitted,
DAVID JOSSELYN
By His Attorney

_____
Rosemary Curran Scapicchio Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
(617) 263-7400
BBO # 558312

15